UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FREDERICA L. MILLER HARRIS,                    Case No. 12-14121

            Plaintiff,                    Thomas L. Ludington
v.                                             United States District Judge

COMMISSIONER OF SOCIAL SECURITY,               Michael Hluchaniuk
                                               United States Magistrate Judge

            Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 19, 22)**

## I.    PROCEDURAL HISTORY

### A.    Proceedings in this Court

On September 17, 2012, plaintiff Frederica L. Miller Harris filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Thomas L. Ludington referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claims for disability insurance benefits and supplemental security income.  (Dkt. p).  This matter is before the Court on cross-motions for summary judgment.  (Dkt. 19, 22).

1

**B.     Administrative Proceedings**

Plaintiff filed the instant claims for disability insurance benefits and supplemental security income benefits on May 4, 2010, alleging disability beginning November 15, 2005.  (Dkt. 16-5, Pg ID 135-40, 142-43).  Plaintiff's claims were initially disapproved by the Commissioner on August 19, 2010.  (Dkt. 16-3, Pg ID 76-82).  Plaintiff requested a hearing and on July 7, 2011, plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Roy L. Roulhac, who considered the case de novo.  (Dkt. 16-2, Pg ID 53-63).  Plaintiff amended the alleged onset date of disability to January 11, 2006, after receiving advice and counsel from her attorney, to a time that includes treatment records.  (Dkt. 16-2, Pg ID 43, 56; Dkt. 16-6, Pg ID 189).  In a decision dated July 26, 2011, the ALJ found that plaintiff was not disabled.  (Dkt. 16-2, Pg ID 40-49).  Plaintiff requested a review of this decision, and the ALJ's decision became the final decision of the Commissioner when the Appeals Council on August 29, 2012, denied plaintiff's request for review.  (Dkt. 16-2, Pg ID 34-37); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

2

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff was born in 1951 and was 60 years old at the time of the administrative hearing, and 54 years of age on the amended alleged disability onset date.  (Dkt. 16-2, Pg ID 45).  Plaintiff had past relevant work as an assembler, machine tender.  (Dkt. 16-2, Pg ID 66).  In denying plaintiff's claims, defendant Commissioner considered plantar fasciitus, bilateral carpal tunnel syndrome, back problem, and high blood pressure as possible bases of disability. (Dkt. 16-3, Pg ID 70).

The ALJ applied the five-step disability analysis to plaintiff's claims and found at step one that plaintiff had not engaged in substantial gainful activity since the amended alleged onset date.  (Dkt. 16-2, Pg ID 45).  At step two, the ALJ found that plaintiff had the following medically determinable impairments: hypertension, osteoarthritis, hepatitis C, high cholesterol, stress induced cardiomegaly, and abdominal pain, but that plaintiff does not have an impairment or combination of impairments that has significantly limited her ability to perform basic work-related activities for twelve consecutive months, and that plaintiff therefore does not have a severe impairment or combination of impairments.  (Dkt. 16-2, Pg ID 45-48).  A person who does not have a severe impairment will not be found "disabled."  20 C.F.R. § 404.1520(c).  The ALJ concluded, therefore, that

3

plaintiff has not been under a disability, as defined by the Social Security Act, through the date of the decision.  (Dkt. 16-2, Pg ID 48).

### B.    Plaintiff's Claims of Error

Plaintiff, appearing *pro se*, filed a motion for summary judgment seeking judicial review of the agency's final decision that she is not disabled and therefore is not entitled to disability insurance benefits or supplemental security income. However, plaintiff's motion contained no argument and did not list any specific claims of error.

### C.    The Commissioner's Motion for Summary Judgment

The Commissioner argues that the issue here is whether substantial evidence supports the ALJ's findings that plaintiff did not have a severe impairment.  The ALJ found that plaintiff had medically determinable impairments including hypertension, osteoarthritis, hepatitis C, high cholesterol, stress induced cardiomegaly, and abdominal pain.  (Tr. 15).  However, the ALJ found that those impairments were not severe because they would not significantly limit plaintiff's ability to perform basic work activities.  (Tr. 15, 192).  The Commissioner contends that the ALJ supported this determination by noting that plaintiff had minimal and conservative treatment, her primary care provider noted she was asymptomatic, she had normal physical examinations, and her hypertension was well controlled.  (Tr. 15).  According to the Commissioner, the

ALJ considered the opinion of Dr. Bina Shaw, the State agency consulting examiner, that plaintiff could work only four to six hours a day and had other significant limitations, but rejected that opinion because it was inconsistent with both Dr. Shaw's examination findings and the other record evidence.  (Tr 15).  The Commissioner contends that despite plaintiff's allegations of disabling impairments, substantial evidence supports the ALJ's decision.

The Commissioner asserts that after examining plaintiff, Dr. Shaw opined that she could not work a full eight-hour day and had other significant limitations. (Tr. 192). The Commissioner argues that while opinions from treating sources are assigned controlling weight under certain circumstances, opinions of a source examining a claimant only once, such as Dr. Shaw, are not entitled to such deference.  *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (holding that the treating physician rationale did not apply to a report from a medical source that only examined the claimant on one occasion); 20 C.F.R. §§ 404.1527(d), 416.927(d).  The Commissioner argues that the ALJ reasonably discounted this opinion because it was inconsistent with both Dr. Shaw's examination findings and the other record evidence.  (Tr. 15).  *See* 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4) (in determining the weight to be assigned to a medical source opinion, an ALJ considers the degree to which the opinion is consistent with the record as a whole).

5

According to the Commissioner, Dr. Shaw's opinion conflicted with his examination findings contained in the same report. (Tr. 191-98). Dr. Shaw diagnosed high blood pressure and a history of plantar fasciitis and carpal tunnel syndrome (Tr. 193), and although Dr. Shaw diagnosed a history of plantar fasciitis, Dr. Shaw noted that plaintiff had no difficulty walking and was able to fully bear her weight. (Tr. 191). Similarly, Dr. Shaw noted that plaintiff's carpal tunnel syndrome was asymptomatic (Tr. 193), and other than recording plaintiff's blood pressure, Dr. Shaw made no clinical findings regarding her hypertension. (Tr. 192-93). The Commissioner asserts that Dr. Shaw diagnosed three conditions, but found no abnormalities relating to any of them. Indeed, the Commissioner continues, the only abnormalities Dr. Shaw found were mild sacroiliac joint tenderness and some reduction in lumbar spine motion. (Tr. 192, 194). Thus, the Commissioner concludes, the ALJ reasonably found that Dr. Shaw's opinion conflicted with his examination findings. (Tr. 15).

The Commissioner further argues that the ALJ also reasonably found that Dr. Shaw's opinion conflicted with the record as a whole. (Tr. 15). For example, the ALJ noted that none of the treatment notes mentioned either plantar fasciitis or carpal tunnel syndrome. (Tr. 15). Furthermore, the ALJ found that Dr. Shaw's opinion conflicted with the October 2008 hospital discharge note indicating that plaintiff could perform unrestricted activity. (Tr. 15, 177). The Commissioner

6

concludes therefore that substantial evidence supports the ALJ's finding that Dr. Shaw's opinion was entitled to limited weight. (Tr. 15).

The Commissioner argues that the ALJ also properly considered plaintiff's allegations of debilitating symptoms, but rejected them because they conflicted with the medical evidence. (Tr. 15). *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (ALJ's finding that plaintiff's claims regarding the severity of her symptoms were not fully credible was supported by substantial evidence when it was consistent with the observations of medical personnel). According to the Commissioner, the ALJ determined that despite several visits to the emergency room, the record showed that plaintiff's conditions were routine and were either controlled with medications or asymptomatic. (Tr. 14). For example, plaintiff had a brief period of hospital treatment in October 2008 for chest pain, nausea, vomiting, and abdominal pain. (Tr. 174-78). Plaintiff's chest pain, which was determined to be stress-induced myopathy, was relieved with nitroglycerine and her other symptoms responded to antibiotics. (Tr. 176-77). The Commissioner asserts that at discharge, plaintiff was "put on unrestricted activity," and she received no further treatment for myopathy. (Tr. 177).

The Commissioner contends that in addition to complaining of abdominal pain in October 2008, plaintiff presented to the emergency room on two occasions with complaints of abdominal or flank pain. (Tr. 179, 187). The Commissioner

asserts, however, that neither visit involved significant treatment or diagnostic findings. In January 2006, plaintiff complained of vomiting, diarrhea and abdominal tenderness and was given medications for nausea and pain. (Tr. 179, 180, 183). There was no follow-up treatment. In February 2010, plaintiff reported flank pain, but a CT scan showed only diverticulosis with no diverticulitis. (Tr. 190).

The Commissioner asserts that plaintiff was regularly followed for high blood pressure, but this hypertension was found well-controlled in March 2010. (Tr. 200). Plaintiff's blood pressure was high in May 2010, but she stated that she was "totally asymptomatic." (Tr. 212). According to the Commissioner, a treatment provider noted in February 2011 that plaintiff's hypertension was well-controlled. (Tr. 224). And, despite plaintiff's complaints of severe back pain, she only reported osteoarthritis to one treatment provider, but stated that it was asymptomatic. (Tr. 200). The Commissioner argues that there is nothing in the treatment records to suggest that plaintiff had symptoms due to her hepatitis C and high cholesterol.

The Commissioner therefore argues that substantial evidence supports the ALJ's finding that despite the fact that plaintiff had medically determinable impairments and complained of severe symptoms, the conditions were not severe because the conditions required only minimal and conservative treatment and were

8

either well-controlled or asymptomatic.  The Commissioner concludes that this Court should affirm the Commissioner's finding of no disability.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the

11

administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508

(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")

(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,

198 Fed. Appx. 521, 526 (6th Cir. 2006).

### B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et

seq*.).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by

> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.
>
> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.
>
> Step Four:  If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.
>
> Step Five: Even if the claimant is unable to perform his
> or her past relevant work, if other work exists in the
> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits

13

are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

14

## C.     Analysis and Conclusions

As set forth above, the ALJ found that plaintiff has several medically determinable impairments: hypertension, osteoarthritis, hepatitis C, high cholesterol, stress induced cardiomegaly, and abdominal pain.  (Tr. 45).  The ALJ then concluded that none of these impairments, alone or in combination, are severe within the meaning of the Act.  Because the ALJ found that plaintiff did not have a severe impairment at step two of the sequential analysis, he did not proceed further with the disability analysis.  Plaintiff seeks review of this decision, ostensibly arguing that it is not supported by substantial evidence.[1]

At step two of the sequential evaluation process, the ALJ must consider whether a claimant has a severe impairment and whether the impairment(s) meet the twelve month durational requirement in 20 C.F.R. 404.1509.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 188 (6th Cir. 2009) ("At step two, if a claimant does not have a severe medically determinable physical or mental impairment . . . that meets the durational requirement in § 404.1509 . . ., or a combination of impairments that is severe and meets the durational requirement, then [she] is not disabled.").  "To

---

[1]Although plaintiff's motion for summary judgment contained no argument or listed claims of error, as plaintiff is proceeding *pro se*, the undersigned will treat plaintiff's motion as arguing that the ALJ's decision is not supported by substantial evidence and should be remanded for further consideration.

surmount the step two hurdle, the applicant bears the ultimate burden of establishing that the administrative record contains objective medical evidence suggesting that the applicant was 'disabled' as defined by the Act. . . ." *Despins v. Comm'r of Soc. Sec.*, 257 Fed. Appx. 923, 929 (6th Cir. 2007). A "severe" impairment is defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). Basic work activities are defined in the regulations as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). Examples include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in routine work settings. *See id.*

In the Sixth Circuit, step two of the sequential disability process is considered a "de minimis hurdle" designed to subject to dismissal only those claims that are "totally groundless" from a medical standpoint. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n.2 (6th Cir. 2007) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)). An impairment "can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age,

education, and experience." *Id.* As the Sixth Circuit has recognized, "this lenient interpretation of the severity requirement in part represents the courts' response to the Secretary's questionable practice in the early 1980s of using the step two regulation to deny meritorious claims without proper vocational analysis." *Long v. Apfel*, 1 Fed. Appx. 326, 331 (6th Cir. 2001) (citation omitted). Nonetheless, not all impairments are severe: "The mere existence of . . . impairments . . . does not establish that [the claimant] was significantly limited from performing basic work activities for a continuous period of time." *Despins*, 257 Fed. Appx. at 930 (citations omitted). "In considering whether a claimant has a severe impairment, an ALJ must not accept unsupported medical opinions or a claimant's subjective complaints." *Younan v. Comm'r of Soc. Sec.*, 2012 WL 5439286, at *8 (E.D. Mich. Aug. 14, 2012) (citing *Weckbacher v. Comm'r of Soc. Sec.*, 2012 WL 2809697, at *9 (S.D. Ohio July 10, 2012)), *adopted by* 2012 WL 5439280 (E.D. Mich. Nov. 7, 2012).

The ALJ here addressed each of plaintiff's medically determinable impairments and found that they were not "severe," and thus found that plaintiff was not disabled at step two of the sequential evaluation. The ALJ explained that "despite several visits to the emergency room, the record shows the claimant's treatment was routine and her conditions were either controlled with medications or asymptomatic." (Tr. 14). The ALJ thoroughly reviewed the record evidence

17

and concluded that "the sparse medical evidence establishes only slight abnormalities that would have no more than minimal effects on her ability to work." (Tr. 14-15). The undersigned has similarly reviewed the record evidence and agrees with the Commissioner that the ALJ's disability determination is supported by substantial evidence.

The ALJ acknowledged that plaintiff presented to the emergency room for emesis and diarrhea on January 11, 2006, but these symptoms were subsequently resolved and did not last nor were expected to last for the required 12-month durational period. (Tr. 14, citing Tr. 179-84). Plaintiff received treatment at St. John Hospital and Medical Center from October 14, 2008 through October 17, 2008 for chest and upper left quadrant pain that radiated to her back, and she developed abdominal pain, nausea and vomiting. (Tr. 14, citing Tr. 153-78). The ALJ thoroughly discussed plaintiff's treatment and testing, which included an abdominal CT scan showing mild diverticulitis and a possible fibroid, a chest x-ray showing no evidence of any acute infiltrates or cardiomegaly, and an EKG showing normal sinus rhythm with some sinus arrhythmia. (*Id.*). In addition, a cardiac catheterization revealed normal coronary anatomy, but presentation "consistent with stress-induced cardiomyopathy." (*Id.*). An October 17, 2008 echocardiogram showed an estimated ejection fraction of 35-45%, but plaintiff's chest pain was relieved with nitroglycerin and her nausea, vomiting and abdominal

pain were well controlled with medication. (*Id.*). Plaintiff was discharged with diagnoses of abdominal pain, questionable secondary to diverticulitis, hypertension, hyperlipidemia, hepatitis C, nonischemic cardiomyopathy, and elevated troponins, and plaintiff was put on unrestricted activity. (*Id.*). The ALJ notes that the record does not contain any follow-up related to these conditions, and that the record instead shows that plaintiff denied any chest pains or shortness of breath at subsequent examinations. (Tr. 14, citing Tr. 199-26).

The ALJ further acknowledged that plaintiff underwent a colonoscopy with biopsy in June 2009, which returned normal without evidence of colitis, mass, or polyps. (Tr. 14, citing Tr. 185). Plaintiff presented to the emergency department on February 15, 2010, with complaints of right flank pain, and a CT scan showed diverticulosis with no evidence of appendicitis or diverticulitis identified, and plaintiff was discharged without admission. (Tr. 14, citing Tr. 186-90). Treatment notes dated March 1, 2010 through May 4, 2011 showed plaintiff received conservative treatment for her diagnoses of hypertension, osteoarthritis, hepatitis C status post treatment, and hyperlipidemia, consisting primarily of three to six month blood pressure check-ups and medication refills. (Tr. 14-15, citing Tr. 199-26). Plaintiff was generally described as asymptomatic and her hypertension was well-controlled with medication. (*Id.*). Although plaintiff was diagnosed with osteoarthritis, the progress notes show that she was "totally asymptomatic"

19

without complaints of muscular pain. (*Id.*). Similarly, there is nothing in the record to suggest that plaintiff had symptoms or treatment due to her hepatitis C and high cholesterol. As the Sixth Circuit has held, "[w]hen doctors' reports contain no information regarding physical limitations on the intensity, frequency, and duration of pain associated with a condition, this court has regularly found substantial evidence to support a finding of no severe impairment. *Long*, 1 Fed. Appx. at 331.

The ALJ also discussed the opinion evidence from Dr. Bina Shaw, M.D., who performed a consultative examination of plaintiff on August 2, 2010, at the request of the State agency. (Tr. 15, citing Tr. 191-98). Dr. Shaw noted that plaintiff reported being diagnosed with carpal tunnel syndrome five years ago and was prescribed medication, but had no active symptoms currently because she was not working, and that she reported a history of plantar fasciitis and heel spurs in the past, but she is currently able to walk and bear weight without any difficulty, and she did not bring a cane or walker. (*Id.*). On examination, Dr. Shaw noted full ranges of motion of plaintiff's C-spine, bilateral hips, knees and ankles and bilateral shoulders, elbows, and wrists, and negative straight leg raises. (*Id.*). Dr. Shaw noted mild sacroiliac joint tenderness and some reduction in lumbar spine range of motion, but also noted normal gait, no limp, and no cane use by plaintiff, equal 5/5 muscle strength in all extremities, and that plaintiff could get on and off

20

the table without any assistance.  (*Id.*).  The ALJ noted that inconsistent with Dr.

Shaw's minimal findings upon examination of plaintiff, Dr. Shaw opined that

plaintiff was able to work four to six hours per day, minimally sit, stand, walk, and

bend, and could lift five to ten pounds.  (*Id.*).  The ALJ found these findings

inconsistent with Dr. Shaw's own examination of plaintiff and also inconsistent

with the record as a whole, including the treatment notes of plaintiff's primary

care facility, the emergency records, and the lack of medical signs and findings,

and in particular contrary to the "unrestricted activity" limitation in the emergency

notes.  (Tr. 15, citing Tr. 153-78).  The ALJ further properly noted that the records

from plaintiff's primary care facility do not contain any evidence regarding carpal

tunnel syndrome or plantar fasciitis.  (Tr. 15, citing Tr. 199-26).  The ALJ

therefore gave Dr. Shaw's opinion limited weight.  (Tr. 15).

    As the Commissioner properly argues, as plaintiff only saw Dr. Shaw one

time, that doctor is not considered a "treating source" and consequently the

treating source rationale does not apply to the doctor's report.  *See Gayheart v.

Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) ("opinions from

nontreating and nonexamining sources are never assessed for 'controlling

weight'"); 20 C.F.R. § 416.927 (consulting physician opinions are afforded weight

according to factors such as whether they are supported by objective findings,

consistent with the record as a whole, and the extent of the physician's

relationship to the claimant).  The undersigned suggests the ALJ's conclusion that Dr. Shaw's opinion, which is based upon a single examination, is accorded limited weight is supported by substantial evidence because, as explained above, the ALJ found that the opinion is not supported by the doctor's own examination findings and is inconsistent with the record as a whole.  (Tr. 15).  *See Spencer v. Comm'r of Soc. Sec.*, 2013 WL 5507332, at *5-6 (N.D. Ohio Oct. 2, 2013) (concluding that since the one-time examining physician's "opinion was not supported by his diagnostic and objective medical findings and was contradicted by the evidence of record, the ALJ correctly concluded that his opinion should not be afforded considerable weight).  The ALJ thoroughly discussed Dr. Shaw's findings and the record evidence and explained his reason for affording Dr. Shaw's opinion only limited weight.

The undersigned further suggests that substantial evidence of record, including plaintiff's limited and conservative medical treatment, relatively benign physical examinations and diagnostic study findings, and daily activities, supports the ALJ's opinion that plaintiff's subjective complaints of pain were only partially credible.  (Tr. 13-14).  The ALJ concluded that plaintiff's medically-determinable impairments could reasonably be expected to cause the alleged symptoms, but plaintiff's subjective complaints concerning the intensity, persistence and limiting effects of her symptoms were not credible to the extent they are inconsistent with

finding that plaintiff has no severe impairment or combination of impairments. (*Id.*). As the Sixth Circuit has held, determinations of credibility related to subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981) (citation omitted). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not required to accept the testimony of a claimant if it conflicts with medical reports and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Rather, when a complaint of pain or other symptoms is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including the objective medical evidence, statements and other information provided by treating or examining physicians . . . and any other relevant evidence in the case record" to determine if the claimant's claims regarding the level of her pain are credible. SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). Consistency between the plaintiff's subjective complaints and the record evidence "tends to support the credibility of the [plaintiff], while inconsistency, although not necessarily defeating, should have the opposite effect." *Kalmbach v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 852, 863 (6th Cir.

2011).  The undersigned agrees with the ALJ here that the objective evidence did not support plaintiff's claims of limitations.  As discussed above, the ALJ considered plaintiff's allegations in light of the evidence in the record and sufficiently explained how plaintiff's allegations were inconsistent with the record evidence, and the ALJ's findings were well within the zone of reasonable choices, *see Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986), and supported by substantial evidence.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health*

24

*and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 10, 2014            s/Michael Hluchaniuk
                                   Michael Hluchaniuk
                                   United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

I certify that on February 10, 2014, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Derri T. Thomas, Russell Cohen and the Commissioner of Social Security, and I certify that I have mailed by United States Postal Service the foregoing pleading to the following non-ECF participant(s), at the following address(es): Frederica L. Miller Harris, 18849 Schoenherr, Detroit, MI 48205.

s/Tammy Hallwood
Case Manager
(810) 341-7850
tammy_hallwood@mied.uscourts.gov